UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 21 CR 636 |
| ROBERT NARUP | ) ) ) | Hon. Sara L. Ellis |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Over the course of a year, defendant Robert Narup repeatedly supplied firearms to co-defendant Jerome Boykin. Defendant knew that Boykin was taking the firearms to Chicago, where they would be sold and could be used in violence. Defendant nevertheless kept supplying Boykin out of pure greed—because defendant, in his words, liked "dead presidents," meaning money. In total, defendant was responsible for introducing upwards of 50 firearms to the streets of Chicago, and he attempted to sell 16 more. For this exceptionally serious conduct, a Guidelines sentence of 60 months is sufficient, but not greater than necessary, to achieve the goals of sentencing.

**I. Background**

Starting in at least October of 2020, defendant would go to gun shows across the country, including in Missouri, Iowa, and Arkansas. Defendant would resell the firearms he purchased there to, among others, co-defendant Boykin. For about a year, defendant and Boykin met up every other week, and Boykin bought 3 to 5 firearms

1

from defendant each time. Defendant kept the firearms in his car. Between meetings, defendant and Boykin would text about what types of firearms defendant had available and negotiate prices.

Defendant knew that Boykin was bringing the firearms to Chicago. For example, Boykin explicitly talked about the type of firearms that his "boy in Chicago" liked. On October 15, 2021, defendant met with Boykin and an undercover agent in Missouri. Boykin referred to the undercover agent as his customer from Chicago, and the undercover agent repeatedly referred to his business in Chicago. During the undercover transaction, the undercover agent told defendant that if the guns were used in a shooting, it would help their business, because the shooters would dispose of the firearm and need more guns. Ultimately, defendant sold the agent 16 firearms and two silencers, in exchange for $14,000, before he was arrested.

In a post-arrest interview, defendant admitted that he had other customers who bought firearms from him, although Boykin was the only one who bought in bulk. He admitted selling Boykin two silencers in a previous deal. He stated that he sold firearms because he needed to supplement his income since retiring. When agents asked if defendant thought about the fact that the firearms he sold might be used in violence in Chicago, defendant responded that he thought about it "all the time," that he felt "terrible," about it, but kept doing it because "I like dead presidents."

## II. Procedural History

On May 16, 2022, a Second Superseding Information charged defendant with one count of being in the business of unlawfully dealing firearms without a license. On February 10, 2023, defendant pleaded guilty to Count One of the Second Superseding Indictment. Sentencing in this matter is set for July 28, 2023.

## III. Statutory Maximum Sentence

The maximum term is of imprisonment is five years' imprisonment. 18 U.S.C. § 922(a)(1)(A), 924(a)(1)(D). A special assessment of $100 is mandatory. The authorized term of supervised release is not more than 3 years.

## IV. The Advisory Sentencing Guidelines Range

The advisory Guidelines calculations are based on the November 2021 version of the Sentencing Guidelines Manual. The government has no objection to the Guidelines as calculated by probation.

The base offense level is 18 because defendant sold silencers, which are firearms described in 26 U.S.C. § 5845(a), pursuant to Guideline § 2K2.1(a)(5). PSR ¶ 17. Six levels are added because the offense involved between 25 and 99 firearms. Guideline § 2K2.1(b)(1)(C). PSR ¶ 18. Four levels are added because defendant engaged in the trafficking of firearms, pursuant to Guideline § 2K2.1(b)(5). PSR ¶ 19. Four levels are added because defendant knew the firearms would be used in another felony offense, namely, that Boykin was trading them for marijuana in Chicago. Guideline § 2K2.1(b)(6)(B); PSR ¶ 20. Three levels are subtracted because defendant

3

has accepted responsibility and timely notified the government of his intent to plead guilty. The total base offense level is 29. PSR ¶ 28.

Defendant has no criminal history points, so his criminal history category is I.

Accordingly, with a criminal history category of I and a base offense level of 29, the Guidelines range is 87 to 108 months' imprisonment. PSR ¶ 84. However, because the statutory maximum sentence is five years, the Guidelines sentence is 60 months. Guideline § 5G1.1(a).

### V.     Application of Section 3553(a) Sentencing Factors

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In determining a sentence to impose, courts consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence from future criminal conduct. 18 U.S.C. § 3553(a). The Court must also consider the advisory range set by the Sentencing Guidelines. Although the Sentencing Guidelines are advisory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Here, a Guidelines sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

### a. The Nature and Seriousness of the Offense

The seriousness of defendant's offense cannot be overstated. Defendant knowingly sent firearms to the streets of Chicago, over, and over, and over. Every other week for a year, defendant met with Boykin and sold him firearms, knowing full well where they were going and how they might be used. Defendant's actions directly contributed to putting deadly weapons in the hands of violent criminals and felons, who rely on people like defendant to supply guns for them because they are unable or unwilling to legally buy guns themselves. And had law enforcement not intercepted him on October 15, defendant would have sold 16 more firearms to an undercover agent he thought was a Chicago-based gun buyer.

Defendant's motivation for his conduct—to supplement his income—underscores the seriousness of his offense. He simply treated gun trafficking as a back-up retirement plan. Defendant casually treated trading deadly weapons like they were any other commodity, bartering with Boykin over prices and discounts. His callousness and utter disregard for the harm his actions imposed on others emphasize why a serious sentence is warranted.

### b. Defendant's History and Characteristics

In mitigation, defendant is 72 years old, and suffers from lung cancer. The government respectfully submits that no medical records have been provided to the government, or to probation, corroborating that defendant's lung cancer has progressed to Stage 3 and is progressing to Stage 4. Dkt. 170 at 2 (Defendant's

5

Sentencing Memorandum). Rather, the PSR relies on defendant's interview and his daughter's interview, PSR ¶¶ 48, 57, and notes that defendant "has not provided the undersigned with any supporting medical documentation." PSR ¶ 53. Medical records provided to the government show that as of April 2022, defendant had Stage 1 cancer.[1]

Defendant also described a difficult childhood, due to his mother passing away when he was 6 years old. Defendant is 72, however, and a difficult upbringing cannot excuse criminal conduct so many years later. Defendant's cooperation with law enforcement is mitigating; defendant gave a post-arrest statement immediately and has been overall cooperative since his arrest.

Otherwise, defendant has relationships with his adult children, a history of employment, and does not suffer from substance abuse or mental illness. These characteristics are in some ways mitigating, because they show that defendant had the infrastructure to lead a law-abiding life. However, they are also aggravating, because they emphasize that defendant did not need to turn to high-volume gun trafficking. He did so only because—as he admitted to agents—he found his income in retirement to be lacking.

Finally, the government notes that even the longest sentence defendant might receive, five years, is significantly below what his Guidelines would have been if he

---

[1] The government reserves the right to modify its recommendation if medical records are provided.

were not facing a five-year statutory maximum. Accordingly, a Guidelines sentence is already reflective of the mitigating factors discussed above, while also reflecting the seriousness of the offense.

### c. Respect for the Law, Just Punishment, General Deterrence, and Protection of the Public

A Guidelines sentence will ensure that defendant is adequately punished for his conduct. While defendant's age and lack of criminal history indicate his risk of recidivism is low, as a first-time offender, a serious sentence will deter him from reoffending.

Critically, here, general deterrence will be served by a Guidelines sentence. Straw purchasing and out-of-state gun trafficking remain huge problems in Chicago. These practices put guns in the hands of individuals who cannot legally purchase them, precisely because society has deemed them too much of a public safety risk to possess firearms. People like defendant circumvent those prohibitions and enable the most violent members of our city to obtain firearms. Defendant's sentence must send a message to others that high-volume gun trafficking will be met with serious consequences. Defendant's recommendation of time served and supervised release not only denigrates the seriousness of the offense, but such a sentence would send a message that gun trafficking will be met with nothing more than a slap on the wrist, enabling people like defendant to continue funneling firearms into Chicago from out of state.

7

### d. Recommended Conditions of Supervised Release

Under 18 U.S.C. § 3583(d), a sentencing court has discretion to impose appropriate conditions of supervised release, to the extent that such conditions (1) are reasonably related to factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in §3553(a); and (3) are consistent with the policy statements issued by the Sentencing Commission. Policies emphasized by the Sentencing Commission include deterrence, rehabilitation, and protecting the public. *United States v. Armour*, 804 F.3d 859, 867 (7th Cir. 2015).

The government recommends a two-year term of supervised release. A period of supervised release will serve to deter defendant from committing future offenses, while also providing oversight and resources to aid defendant in reentering society. The applicable mandatory conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on page 18 of the PSR. The government has only one objection (explained below) to the recommended discretionary and special conditions of Supervised Release set forth on pages 18 through 23 of the PSR, and largely agrees with the probation officer's rationale for these conditions.

The government agrees that each of the mandatory conditions suggested by the Probation Office (1, 2, 5, and 6) should apply. The government agrees with discretionary conditions 6, 7, 8, 14, 15, 16, 17, 18, and 22. Regarding condition 4, that

defendant maintain employment, the government does not believe this condition is necessary, given defendant's age, if defendant's supervised release occurs after a term of imprisonment. If the Court sentences to defendant to no incarceration, then the government agrees with the imposition of discretionary condition 4, given that he is currently employed part-time. PSR ¶ 71. The government agrees with special conditions 3 and 11. These conditions will (1) serve to facilitate supervision by defendant's probation office; (2) encourage defendant's compliance with the law; (3) deter future crimes; and (4) aid defendant in becoming a productive member of society upon release.

## IV. Conclusion

For these reasons, the Court should sentence defendant to a Guidelines sentence of 60 months.

Dated: July 21, 2023

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ *Megan DeMarco*
MEGAN DEMARCO
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5356

9